IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEZLIE BARTON<br>4226 Wincove Drive<br>Groveport, OH  43125, | :<br>:<br>: | Case No. 2:23-cv-816 |
| Plaintiff, | : | Judge _____ |
| v. | : | |
| RELIANCE STANDARD LIFE<br> INSURANCE COMPANY<br>1700 Market Street, Suite 1200<br>Philadelphia, PA  19103, | :<br><br>:<br><br>: | Magistrate Judge_____ |
| Defendant. | | |

**COMPLAINT**

**Jury Demand Endorsed Hereon**

For her Complaint against the Defendant, Reliance Standard Life Insurance Company, the Plaintiff, Lezlie Barton, states as follows:

**Parties**

1. The Plaintiff, Lezlie Barton, a citizen and resident of Ohio, is a former employee of the Board of Education of the County of Cabell, West Virginia (the "Board"), and is a third-party beneficiary of a group disability insurance policy, Policy No. LTD 122782 (the "Policy"), issued by Reliance Standard Life Insurance Company to the Board.

2. The Defendant, Reliance Standard Life Insurance Company ("Reliance"), is an insurance company authorized to do business under the laws of this state with its principal place of business in Philadelphia, PA, and its place of incorporation in a state other than Ohio.

## Jurisdiction and Venue

3. The Plaintiff's claims arise under the common law of Ohio, the parties are diverse, and the amount in controversy exceeds the jurisdictional amount. Jurisdiction is predicated on 28 U.S.C. §1332.

4. A substantial part of the events giving rise to Barton's claim occurred in Franklin and Fairfield Counties, Ohio. By way of illustration (but not limitation), Reliance requested and obtained medical records from Barton's treating physicians in Columbus and Pickerington, Ohio; Reliance arranged for Barton to attend a so-called "independent medical evaluation" with a physician in Dublin, Ohio; and Reliance directed communications, including its final termination letter, to Barton at her Columbus-area residence. Venue, therefore, is appropriate in the Eastern Division of the Southern District of Ohio.

## Facts Common to All Claims

5. In 2003, the Board hired Lezlie Barton to work as a teacher. In 2010, after receiving various other promotions, Barton was promoted to the position of Cabell County Schools Curriculum Supervisor for grades pre-kindergarten through twelfth grade.

6. As an employee of the Board, Barton was eligible to participate in the disability benefit program established under the Policy.

7. In 2012, Barton became disabled and unable to work due to, *inter alia*, fibromyalgia, myalgic encephalopathy/chronic fatigue syndrome ("ME/CFS"), and sleep disorders.

8. Barton applied to Reliance for long-term disability benefits. Reliance determined that Barton was disabled from her own occupation and approved the payment of disability benefits through the Policy's two-year "Own Occupation" period.

9. In 2014, Reliance again evaluated Barton's claim. This time, Reliance concluded that Barton was disabled from "any occupation" and authorized her benefits to continue.

10. In 2015, Reliance reviewed Barton's claim again and, because Barton's condition had not improved, concluded that she remained disabled from any occupation.

11. In 2016, Reliance reviewed Barton's claim and, as before, concluded that Barton's condition had not improved and that Barton remained disabled from any occupation.

12. Reliance reviewed Barton's claim again in 2017, observing that she "continues to be markedly impaired" and had shown "no improvement." Reliance concluded that she remained disabled from any occupation.

13. Reliance reviewed Barton's claim again in 2018 and yet again concluded that she remained disabled from any occupation.

14. After the 2018 review, Reliance concluded that Barton met Reliance's "Extended Disability" criteria.

15. Following the 2018 review, a Reliance employee recorded in a note in Barton's claim file: "LTD certed to max." On information and belief, this statement indicates that Reliance had certified that Barton's medical conditions would cause her to remain disabled through her 67th birthday, which marks the end of the Policy's maximum benefit duration.

16. Reliance reviewed Barton's claim again in 2021. In a review dated May 10, 2021, a Reliance employee—identified as a nurse named "D. Kelly"—opined that Ms. Barton was capable of sedentary work and, therefore, was no longer disabled.

17. By letter dated May 21, 2021, Reliance notified Barton that it had terminated her benefits.

18. That May 21 letter informed Barton of her appeal rights. Specifically, the letter promised that, if Barton appealed, Reliance's "review will be conducted by an individual who is neither the individual who made the underlying determination that is the subject of the review, nor the subordinate of such individual."

19. Barton timely appealed, providing additional evidence of disability.

20. By letter dated December 13, 2021, Reliance informed Barton that it had "conducted a review of [her] appeal letter" and accompanying documentation.

21. The December 13 letter reiterated that Barton "is entitled to an independent review of the claim facts and the adverse determination made regarding her eligibility to continue to receive benefits." It further stated that the "review is being conducted separately from the individual(s) who made the original claim decision to deny the claim."

22. Contrary to the representations in Reliance's letters, however, Reliance repeatedly engaged the same employee to review Barton's claim.

23. "D. Kelly," the Reliance-employed nurse who recommended denial of Barton's claim in May 2021, wrote a "Medical Pre-appeal" report on December 1, 2021, and an additional "Medical Appeal" report on January 19, 2022.

24. In her January 19, 2022, report, D. Kelly wrote that her "opinion remains unchanged."

25. After D. Kelly affirmed her own opinion, Reliance arranged for Barton to be examined by Kevin Trangle, a medical doctor who markets medical evaluations, expert-witness testimony, and legal advice services to insurance companies.

26. After conducting a brief in-person evaluation of Barton, Dr. Trangle issued a "Disability Insurance Evaluation" report concluding that Barton was "clearly capable of working

4

the light duty capacity" because, in his opinion, she did not have "any medical problem that would limit her ability to work and function" whatsoever.

27. In total, Reliance paid more than $8,000 for Dr. Trangle's services.

28. Relying on Dr. Trangle's opinion, Reliance upheld its termination of Barton's disability benefits in a letter dated June 23, 2022.

**Count I – For Breach of Contract**

29. The foregoing allegations are incorporated by reference as if fully rewritten herein.

30. Barton brings this claim under the common law of Ohio.

31. Barton is an intended third-party beneficiary under the Policy.

32. Barton remains disabled under the Policy and entitled to a monthly benefit.

33. Reliance breached the terms of its Policy by closing Barton's claim and terminating her monthly benefit.

34. As a direct and proximate cause of Reliance's breach of contract, Barton has suffered damage in the form of lost monthly disability benefits.

**Count II – For Bad Faith**

35. The foregoing allegations are incorporated by reference as if fully rewritten herein.

36. Barton brings this claim under the common law of Ohio.

37. Not only did Reliance breach its contract with Barton, it acted in bad faith in doing so. Reliance's actions were in bad faith, *inter alia,* because:

    a. Reliance terminated Barton's claim despite its knowledge that Barton's medical conditions had not improved since Reliance first approved her claim.

5

    b. During its consideration of Barton's appeal, Reliance repeatedly engaged D. Kelly—the same nurse consultant who recommended the initial termination of Barton's claim—to review her own recommendation, despite Reliance's representations that Barton was entitled to an independent review by claims personnel who were not involved in the initial decision to terminate her claim.

    c. Reliance repeatedly misrepresented the nature and scope of its "independent" review of Barton's claim even after the review was under way and even though Reliance knew that its representations were not true.

    d. Reliance ultimately justified its termination of Barton's benefits based on the opinion of an "independent" physician who was not qualified to render an opinion about fibromyalgia, ME/CFS, or their effects on a claimant's ability to work.

    e. Reliance afforded Barton a sham appeal process that was biased toward finding that she was not disabled.

38. As a direct and proximate cause of Reliance's bad faith, Barton has suffered harm, including emotional distress, the loss of the opportunity to purchase a home for which she was prequalified at the time of Reliance's denial, and other forgone opportunities.

39. Reliance's actions, moreover, were in reckless disregard of Barton's rights under the terms of the Policy.

WHEREFORE, the Plaintiff, Lezlie Barton, demands judgment in her favor and against Reliance as follows:

A. For compensatory damages for breach of contract in an amount to be determined at trial, but in no event less than $200,000;

B. For compensatory damages for bad faith in an amount to be determined at trial, but in no event less than $100,000;

C. For punitive damages in an amount to be determined at trial, but in no event less than $100,000;

D. Attorney's fees and the costs of this action;

E. Pre-judgment and post-judgment interest; and

F. Such other and further relief as the Court determines to be just and equitable.

Respectfully submitted,

  /s/ Benjamin K.P. Merry
Benjamin K.P. Merry (0099130)
Trial Attorney
Law Offices of Tony C. Merry, LLC
7100 N. High Street, Suite 302
Worthington, Ohio  43085
(614) 372-7114
(614) 505-6109 [fax]
bmerry@tmerrylaw.com
Attorney for Plaintiff

**Jury Demand**

Plaintiff demands trial by jury.

  /s/ Benjamin K.P. Merry